IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MULTIWORTH PARTNERSHIP, LTD | § | CASE NO.  10-70229-M-11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

## CHAPTER 11 PLAN OF REORGANIZATION

**HOOVER SLOVACEK LLP**
EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395
Email: rothberg@hooverslovacek.com
       haselden@hooverslovacek.com

ATTORNEYS FOR DEBTOR

712563_1.DOCX

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MULTIWORTH PARTNERSHIP, LTD | § | CASE NO.  10-70229-M-11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

## CHAPTER 11 PLAN OF REORGANIZATION

MULTIWORTH PARTNERSHIP, LTD ("Multiworth" or "Debtor"), submits this

Chapter 11 Plan of Reorganization (the "Plan") in this proceeding for the treatment of all

outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy

Code.  The Debtor is the proponent of the Plan within the meaning of Section 1129 of the

Bankruptcy Code.  All holders of claims against and equity interests in the Debtor are

encouraged to read the Plan and accompanying Disclosure Statement in their entirety

before voting on the Plan.

## ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

Multiworth is a family owned limited partnership that owns and operates a 27.36

acre tract of commercial real estate located in Alamo, Texas ("Property") and which is

utilized to operate various businesses, including a flea market and dance hall, owned by

other associated entities.  The Property is the Debtor's largest asset and the revenue

received from affiliated entities Alamo Flea Market, LTD and Multiworth International

Investments Corp d/b/a/ Alamo Dance Hall provides the primary source of Debtor's

income.  Multiworth is owned by Triworld International Investments, Inc., its general

712563_1.DOCX                                          1

partner, and its three limited partners, Nancy S. Vargas Living Trust, Taek Kim Living Trust and Miyon Kim. The only business of this Debtor is the ownership of the Property.

The Plan provides for the treatment of the Debtor's existing debts and payment to Creditors by the Reorganized Debtor as follows:  (1) Allowed Administrative Claims and Priority Non-Tax Claims will be paid in cash in full; (2) Allowed Ad Valorem Claims of Taxing Authorities will be paid in cash in full when due; (3) Allowed Non-Tax Priority Claims, if any, will be paid in cash in full within 30 days of the Effective Date; (4) Allowed Priority Tax Claims, if any, will be paid in cash in full within 30 days of the Effective Date; (5) Allowed Secured Claim of Texas Community Bank for Real Estate Note will be paid in full pursuant to the express terms of the original loan documents; (6) Allowed Secured Claim of Texas Community Bank for RLOC will be paid in full pursuant to the express terms of the original loan documents except that the term of the agreement shall be extended for a period of one until September 5, 2012; (7) Allowed General Unsecured Claims shall be paid in full in Cash without interest on the later of thirty (30) days after the Effective Date or the date such Claims become Allowed Claims; (8) the Debtor has filed a motion to estimate the disputed claim of Miriam Vargas at $0. If this motion is granted in full, Miriam Vargas shall receive no distribution under the Plan. If the Court estimates the Miriam Vargas Claim at more than $0, this Plan will be amended to provide for its payment in full as a Class 4 General Unsecured Claim with installments in an amount necessary to pay all Class 4 General Unsecured Claims in full; (9) Allowed Claims of Insiders and Affiliates shall be permitted to offset any amount due the Debtor.  Otherwise, the remaining balance, if any, shall be subordinated to the payment of Class 1, 2, 3 and 4 as provided herein; (10) Holders of Equity Interest shall

retain their Interests held on the date of the filing of the bankruptcy case with the prohibition of payment of dividends until Class 1, 2, 3 and 4 are paid as provided herein. The means for the implementation of the Plan are set forth below.

## ARTICLE 2
### DEFINITIONS

2.1    For purposes of the Plan the following terms shall have the respective meanings specified as follows:

2.1.1    Administrative Claim shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses Allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

2.1.2    Allowed Claim or Allowed Interest shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan.  An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

2.1.3    Avoidance Actions shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for voidable transfers or similar legal theories.

2.1.4   Bankruptcy Code shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.5   Bankruptcy Court shall mean the United States Bankruptcy Court for the Southern District of Texas, McAllen Division, in which the Debtor's Chapter 11 case is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.6   Bankruptcy Estate shall mean all of the assets owned by the Debtor and its estate.

2.1.7   Bankruptcy Rules shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.8   General Bar Date shall mean September 15, 2010, the date established by the Bankruptcy Court as the date by which proofs of claim had to be filed except for claims of Miriam Vargas and the Potential Litigation Claims.

2.1.9   Cash shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.10  Claim shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.11  Class shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.12  Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, and Class 5 Claims, shall mean the Claims so classified in Article 4.

2.1.13  Class 6 Interests shall mean the Allowed Interests so classified in Article 4.

2.1.14  Confirmation Date shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.15  Confirmation Hearing shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.16  Confirmation Order shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.17  Creditor shall mean any entity holding a Claim.

2.1.18  Debtor shall mean Multiworth Partnership, Ltd.

2.1.19  Disbursing Agent shall mean the Reorganized Multiworth Partnership, Ltd.

2.1.20  Disclosure Statement shall mean the written document filed by the Debtor in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.21  Disallowed Claim shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.22  Disputed Claim shall mean that portion (including, where appropriate, the whole) of any Claim that (a) is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount; (c) is not listed in a Debtor's schedules of liabilities, but as to which a proof of claim has been filed with the Bankruptcy Court; or (d) as to which an objection to a proof of claim has been filed and has not become an Allowed Claim.

2.1.23  Effective Date shall mean the date upon which the Confirmation Order becomes a Final Order.

2.1.24  Equity Interest shall mean the interests represented by an "equity security" as defined in Section 101 of the Bankruptcy Code.

2.1.25  Executory Contract(s) shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

2.1.26  Filing Date shall mean March 30, 2010, the date the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

2.1.27  Final Order shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.28  General Unsecured Claim shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtor have an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured

Claim, but would include any deficiency amount under Section 506 of the Bankruptcy Code; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.29   Holder shall mean the owner or Holder of any Claim or Interest.

2.1.30   Interest shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.31   Insider has the definition ascribed to it under the Bankruptcy Code.

2.1.32   Kim Living Trust shall mean the Taek Kim Living Trust, a limited partner of the Debtor.

2.1.33   Lien shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.34   Miguel Vargas shall mean the Intervenor in the Vargas Litigation

2.1.35   Miriam Vargas shall mean Plaintiff in the Vargas Litigation.

2.1.36   Miyon Kim shall mean Miyon Kim, a limited partner of the Debtor.

2.1.37   Multiworth shall mean the Debtor, Multiworth Partnership, Ltd, in Bankruptcy Case No 10-70229-M-11.

2.1.38   Nancy Vargas shall mean Nancy Vargas, an officer and principal of the Debtor.

2.1.39   Non-Tax Priority Claims shall mean any Claim that is defined in Section 507(a)(2)-(7) of the Bankruptcy Code.

2.1.40   Officers shall mean Taek Kim and Nancy Vargas, officers of the Reorganized Debtor.

2.1.41   Person shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.42   Plan shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

712563_1.DOCX

2.1.43   Priority Tax Claims shall mean any Claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

2.1.44   Property shall mean that certain 27.36 acre tract of commercial real estate located in Alamo, Texas.

2.1.45   Professionals shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.46   Pro-Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.47   Real Estate Note shall mean that Promissory Note and Deed of Trust and related loan documents dated September 5, 2007 and executed by Multiworth in favor of Texas Community Bank in the original principal amount of $450,000 and secured by a first lien on the Property.

2.1.48   Reorganized Debtor shall mean Multiworth Partnership, Ltd. immediately after the Effective Date.

2.1.49   RLOC shall mean that Promissory Note and Deed of Trust and related loan documents dated September 5, 2007 and renewed and extended on October 22, 2009 (effective September 5, 2009) and executed by Multiworth in favor of Texas Community Bank in the original principal amount of $350,000 and secured by a second lien on the Property.

2.1.50   Secured Claim shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.51   State Court Litigation shall mean that lawsuit against Multiworth and various related co-defendants, in the 398th District Court for Hidalgo County styled as *Miriam Vargas v. Taek Kim, Nancy Vargas, Multiworth Partnership, Ltd., Triworld International Investments, Inc., Alamo Flea Market Partners, Limited, Alamo Flea Market, LLC, Alamo Dance Hall, Inc., The Valley's Marketplace, LLC, Case No. C-211-10-I.*

2.1.52   Substantial Consummation shall occur on the Effective Date.

2.1.53   Taek Kim shall mean Taek Kim, an officer and principal of the Debtor.

2.1.54   Texas Community Bank shall mean Texas Community Bank, N.A.

2.1.55 <u>Triworld</u> shall mean Triworld International Investments, Inc., the general partner of the Debtor.

2.1.56 <u>Vargas Litigation</u> shall mean Adversary Proceeding No. 10-07009 pending in the United States bankruptcy Court for the Southern District of Texas, McAllen Division and styled as *Miriam Vargas, Plaintiff, Miguel Vargas, Intervenor v. Taek Kim, Nancy Vargas, Multiworth Partnership, Ltd., Triworld International Investments, Inc., Alamo Flea Market Partners, Limited, Alamo Flea Market, LLC, Alamo Dance Hall, Inc., The Valley's Marketplace, LLC, Defendants.*

2.1.57 <u>Vargas Living Trust</u> shall mean the Nancy S. Vargas Living Trust, a limited partner of the Debtor.

2.2    <u>Interpretation</u>. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time. The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

2.3    <u>Application of Definitions and Rules of Construction Contained in the Bankruptcy Code</u>. Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## ARTICLE 3
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section.

3.1    <u>Administrative Claims Bar Date</u>. Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan) against the Debtor, except for administrative expenses incurred in the ordinary course of operating the Debtor's business, must file an application for payment of such Administrative Claim on or within sixty (60) days after entry of the Confirmation Order with actual service upon counsel for the Debtor, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices. The Debtor shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date. U.S. Trustee fees which accrue

after confirmation shall be paid by the Reorganized Debtor until the case is closed or converted. The Debtor shall file with the Court and serve on the United States Trustee a monthly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.  It is not necessary for the U.S. Trustee to file a proof of claim.

3.2     Payment of Administrative Claims.  Each Holder of an unpaid Allowed Administrative Claim shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3     Payment of Non-Tax Priority Claims.  Each Holder of an unpaid Allowed Non-Tax Priority Claim, if any, shall be paid in Cash in full on the later of thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Non-Tax Priority Claim, unless the Holder of such Claim agrees to a different treatment.

3.4     Payment of Unsecured Priority Tax Claims.  The Allowed Priority Tax Claims shall be paid in Cash in full in Cash on the later of Thirty (30) days after the Effective Date or the date such Claim becomes an Allowed Unsecured Priority Claim, unless the Holder of such Claim agrees to a different treatment.

3.5     Payment to Professionals.   All payments to professionals for actual, necessary services and costs advanced on behalf of the bankruptcy cases up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of 11 U.S.C. §330.  Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be the liability of the Reorganized Multiworth.

**ARTICLE 4**
CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below. The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental.  The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

4.1     Class 1.  Allowed Secured Claim of Taxing Authorities.

4.1.1 Classification.  Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities for the year 2010 secured by a lien on all of the Debtor's assets.

712563_1.DOCX                                9

4.1.2 <u>Treatment.</u>  Allowed Secured Class 1 Claims shall be paid in cash in full when due without interest or penalty.  The Allowed Secured Class 1 Claims Holders shall retain their liens until such time as they are paid in full.  Class 1 Claims are not impaired.

4.2     <u>Class 2.   Allowed Secured Claim of Texas Community Bank for Real Estate Note.</u>

4.2.1   <u>Classification.</u>  Class 2 consists of the Allowed Secured Claim of Texas Community Bank secured by a first lien on the Property.

4.2.2   <u>Treatment.</u>  The Holder of the Allowed Secured Class 2 Claim shall be paid by the Reorganized Multiworth in full pursuant to the express terms of the original loan documents.   The Class 2 Claim is unimpaired.

4.3     <u>Class 3.  Allowed Secured Claim of Texas Community Bank for RLOC.</u>

4.3.1   <u>Classification:</u>  Class 3 consists of the Allowed Secured Claim of Texas Community Bank secured by a second lien on the Property.

4.3.2   <u>Treatment:</u>  The term of the RLOC shall be extended until for a period of one year which is September 5, 2012.  Otherwise, the Allowed Secured Class 3 Claim shall be paid by the Reorganized Multiworth in full pursuant to the express terms of the original loan documents.  The Class 3 Claim is impaired.

4.4     <u>Class 4.  Allowed General Unsecured Claims</u>

4.4.1   <u>Classification.</u>   Class 4 consists of the Allowed General Unsecured Claims.

4.4.2   <u>Treatment.</u>   The Holder of the Allowed General Unsecured Class 4 Claims shall be paid in full without interest on the later of thirty (30) days after the Effective Date or the date such Claims become Allowed Claims.  The Class 4 Claims are impaired.[1]

4.5     <u>Class 5. Allowed Claims of Insiders and Affiliates.</u>

4.5.1   <u>Classification.</u>  Class 5 consists of the Allowed Claims of Insiders and Affiliates.

4.5.2   <u>Treatment.</u>  The Holders of Class 5 Claims shall be permitted to offset any amount due the Debtor.  Otherwise, the remaining balance, if

---

[1] As discussed herein and as set out in the Disclosure Statement, if the Claim of Miriam Vargas is estimated in an amount greater than $0, the treatment of the Class 4 Claims shall be modified to provide for payment in full with installments.

any, shall be subordinated to the payment Claims in Classes 1, 2, 3, and 4 as provided for herein.  The Class 5 Claims are impaired.

4.6       Class 6.  Allowed Interests of Equity Holders.

4.6.1     Classification.  Class 6 consists of the Allowed Equity Interests in Multiworth.

4.6.2     Treatment.  The Holders of Class 6 Equity Interests shall retain the Equity Interests held on the date of the filing of the bankruptcy case, with the prohibition of payment of dividends until Classes 1, 2, 3, and 4 are paid as provided for herein.  The Class 6 Interests are impaired.

## ARTICLE 5
## VOTING OF CLAIMS AND INTERESTS

Classes 3, 4, and 5 of Claims and the Class 6 Equity Interests are impaired and therefore are entitled to vote on this Plan.  Accordingly, the acceptances of Class 3, 4, and 5 Claims and Class 6 Equity Interests must be solicited.  Classes 1 and 2 are not impaired under the Plan and are therefore not entitled to vote on the Plan.

## ARTICLE 6
## MEANS FOR EXECUTION OF PLAN

6.1       Vesting of Property of the Estate in Reorganized Debtor. On the Effective Date of the Plan, all property of the Debtor and of its Estate shall vest in the Reorganized Debtor free and clear of liens, claims and encumbrances, except as otherwise provided by the terms of this Plan.

6.2       Continuation of Business Operations.  From and after the Effective Date of the Plan, the Reorganized Debtor shall be authorized to continue ITS normal business operations and enter into such transactions as IT deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.  Cash flow from the operations shall be used to fund payments required by the Plan.

6.3       Directors and Officers of Reorganized Debtor. The Directors and Officers of the Debtor are authorized to continue as Directors and Officers of the Reorganized Debtor from and after the Effective Date of the Plan.

6.4       Source of funds for Payments due on the Effective Date.  The current operational revenues will be used to pay Administrative and Non-Tax Priority Claims, as well as any additional claims required by the Plan that are due on the Effective Date.  To the extent the Reorganized Debtor does not have sufficient funds to pay the Allowed

Claims which are required to be paid in full, the Equity Holders will contribute additional funds as necessary in order ensure that such claims will be timely paid.

6.5     Disbursing Agent.  Reorganized Multiworth shall act as the Disbursing Agent.  If Reorganized Multiworth chooses not to act as the Disbursing Agent, then it shall designate a substitute.

6.6     Exclusive Rights and Duties of the Disbursing Agent.  The duties of the Disbursing Agent shall be as follows:

> 6.6.1     Distribution to Creditors with Administrative Claims.   In accordance with Article 3 of the Plan the Disbursing Agent shall pay the Administrative and Priority Claims first out of Cash on hand generated from operations.

> 6.6.2     Distributions to Creditors with Allowed Claims.   The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4 of the Plan.

> 6.6.3     Distribution to Creditors with Disputed Claims that Subsequently Become Allowed Claims.  Payment to each holder of a Disputed Claim, to the extent it ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of claims to which the disputed claim belongs.  Payments shall be made ten days after the Disputed Claims become Allowed Claims.

6.7     Powers of the Disbursing Agent.  The Disbursing Agent shall have full power and authority to do the following:

> 6.7.1     Make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with Article 4 of the Plan.

> 6.7.2     File all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.

> 6.7.3     Take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

> 6.7.4     Employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

6.7.5    Suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

6.8    <u>Presumption of Disbursing Agent's Authority</u>.  In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of its engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

6.9    <u>Limitation on Disbursing Agent's Liability</u>.

6.9.1    Except gross negligence or willful misconduct, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

6.9.2    The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

6.10    <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all

missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

6.11    Time Bar for Cash Payments. Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

6.12    Unclaimed Property. If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account. If the Person entitled to any such distributions is located within six months after the Effective Date, such distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person. If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall be returned to the Reorganized Multiworth and such Person shall have waived and forfeited its right to such distributions. Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate such Person. It is the obligation of each Person claiming rights under the Plan to keep the Disbursing Agent advised of current address by sending written notice of any changes to the Disbursing Agent.

6.13    Minimum Payment. The minimum amount of any distribution shall be $25. If a payment anticipated by the Plan is due in an amount less than $25, then such payments is hereby waived and the funds shall be retained by the Reorganized Multiworth.

6.14    Fractional Dollars. Any other provision of the Plan notwithstanding, no payments of fractional dollars will be made to any Holder of an Allowed Claim. Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

6.15    Distribution Dates. Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day. The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

6.16    Orders Respecting Claims Distribution. After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of

the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

6.17   Avoidance Actions.   The Reorganized Debtor does not anticipate pursuing any Avoidance Actions after the Effective Date, except to the extent necessary as part of the Claim resolution process. Therefore, the Reorganized Debtor releases all Avoidance Actions and claims except those necessary as part of the Claim resolution process.

6.18   Agreements, Instruments and Documents.   All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable. The Reorganized Debtor shall have a power of attorney, coupled with an interest, to execute and deliver any Plan Document to the extent that counterparty to such document fails to execute and deliver any document required to effectuate the Plan following 20 days written notice and request to such counterparty.

6.19   Further Authorization.   The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.   The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

# ARTICLE 7
## CRAMDOWN AND CLAIMS ALLOWANCE

7.1   Cramdown.   In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY CLASS REJECTS THE PLAN THE DEBTOR WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES.   THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

7.2   Allowance of Claims under the Plan.   Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtor, if the parties cannot agree upon such allowance.   It is expected that the Debtor and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan.   The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

7.3     Objection Deadline.  As soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

7.4     Prosecution of Objections.  On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claim may be made by the Reorganized Debtor and/or Disbursing Agent.

## ARTICLE 8
## DEFAULT

8.1     If any of the following events occur, the Reorganized Debtor will be in breach of this Plan ("Default"):

8.1.1     Failure to pay any amount due under the Plan when due; or

8.1.2     Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

8.2     Should the Reorganized Debtor be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Reorganized Debtor fails to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Reorganized Debtor fails to make when due, at its option, may declare that the Reorganized Debtor is in default of this Plan.

## ARTICLE 9
## EXECUTORY CONTRACTS AND LEASES

9.1     The Debtor hereby assume the executory contracts and leases set forth in Exhibit "A" and any executory contracts and leases previously assumed pursuant to bankruptcy court order.  All licenses issued to the Debtor by governmental authorities are assumed.

9.2     Lease with Alamo Flea Market Ltd. – the Debtor shall enter into and assume a formal lease agreement, substantially similar to that attached hereto as Exhibit "B", to rent a portion of the Property, further described in the lease, to Alamo Flea Market, Ltd.   In connection with this agreement, Alamo Flea Market, Ltd. shall pay Multiworth a monthly rental of $18,594.42, for a term of five years.  In addition, Alamo Flea Market, Ltd. shall bear the responsibility for payment of all property taxes related to the Property and required insurance.

9.3    Lease with Multiworth Investments Corp d/b/a Alamo Dance Hall - the Debtor shall enter into and assume a formal lease agreement, substantially similar to that attached hereto as Exhibit "C", to rent a portion of the Property, further described in the lease, to Multiworth Investments Corp d/b/a Alamo Dance Hall. In connection with this agreement, Multiworth Investments Corp d/b/a Alamo Dance Hall shall pay Multiworth a monthly rental of $16,369.33, for a term of five years. In addition, Multiworth Investments Corp d/b/a Alamo Dance Hall shall bear the responsibility for payment of all property taxes related to the Property and required insurance.

9.4    The Debtor hereby rejects all executory contracts and leases not otherwise assumed in this Plan or by prior Court order.

9.5    Any Claims arising from rejection of an executory contract or lease must be filed on or before 20 days from the Effective Date. Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan. Any Claims arising from rejection, if timely filed and allowed, will be treated as General Unsecured Claims.

9.6    Except as specifically provided for herein, the Debtor shall pay all cure claims in the amount listed on Exhibit "A" on or before 30 days after the Administrative Claims Bar Date set in paragraph 3.1, unless a Claim is filed before the Administrative Claims Bar Date in an amount different from that set forth on Exhibit "A", in which case the cure claim will be paid when and if allowed by Final Order of the Bankruptcy Court.


# ARTICLE 10
## MODIFICATION OF THE PLAN

10.1    The Debtor may propose amendments and modifications of this Plan prior to the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice. After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan. After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure. With respect to all

proposed modifications to the Plan both before and after confirmation, the Debtor shall comply with the requirements of Section 1127 of the Bankruptcy Code.

**ARTICLE 11**
CONDITIONS PRECEDENT

11.1    Conditions to Confirmation.  Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtor shall have been satisfied.  In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

11.2    Waiver   and   Nonfulfillment   of   Conditions   to   Confirmation. Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtor.  In the event the Debtor determines that the conditions to the Plan's confirmation which they may waive cannot be satisfied and should not, in its discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

11.3    Confirmation Order Provisions for Pre-Effective Date Actions.   The Confirmation Order shall empower and authorize the Debtor to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

11.4    Conditions to the Effective Date.  The following are conditions precedent to the effectiveness of the Plan: (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order; (ii) Debtor does not withdraw the Plan at any time prior to the Effective Date; and (iii) the Debtor shall have sufficient Cash on hand to make the initial payments and distributions required under the Plan.

11.5    Waiver   and   Nonfulfillment   of   Conditions   to   Effective   Date. Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Debtor.  In the event that the Debtor determines that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in its sole discretion, be waived, the Debtor may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE 12
### JURISDICTION OF THE BANKRUPTCY COURT

12.1     Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

        12.1.1     To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

        12.1.2     To estimate, liquidate, classify or determine any Claim against the Debtor, including claims for compensation or reimbursement;

        12.1.3     To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtor and any other entity having rights under the Plan as may be necessary to implement the Plan;

        12.1.4     To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

        12.1.5     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

        12.1.6     To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

        12.1.7     To adjudicate all Claims to any lien on any of the Debtor's assets;

        12.1.8     To hear and determine matters concerning state, local and federal taxes pursuant to the Bankruptcy Code, including (but not limited to) sections 346, 505 and 1146 thereof and to enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtor, whether before or after confirmation, including to determine any and all tax effects of the Plan;

        12.1.9     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary

to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

12.1.10    To determine all questions and disputes regarding title to assets and shares of the Debtor, Reorganized Debtor or of the Bankruptcy Estate, as may be necessary to implement the Plan;

12.1.11    To enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require persons holding Claims being released to release Claims in compliance with the Plan;

12.1.12    To fix the value of collateral in connection with determining Claims;

12.1.13    To enter a final decree closing the case and making such final administrative provisions for the case as may be necessary or appropriate; and

12.1.14    To, even after entry of a final decree, hear any cases enforcing Bankruptcy Code section 525.

12.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 12.1 of the Plan, this Article 12 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 13
### EFFECT OF CONFIRMATION

13.1    Binding Effect.  As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan and any Creditor, Equity Holder of the Debtor, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan, and the United States and any licensing authority.  After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be.  The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 13.1.

13.2    Satisfaction of Claims and Interests.  Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all Interests.

13.3    Vesting of Property.   Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Property of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all assets of the Multiworth Bankruptcy Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, and encumbrances.  Moreover, all licenses and permits held by the Debtor shall continue be held by them.

13.4    Discharge.   Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtor shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

13.5    **Injunction.   The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims against the Reorganized Debtor in any manner other than as provided for in the Plan.  All Holders of Claims shall be prohibited from asserting against the Debtor, Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a proof of Claim.   Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan. This injunction also permits the Reorganized Debtor to enforce 11 U.S.C. §525(a) upon improper revocation or restriction of licenses.**

13.6    Preservation of Setoff Rights.   In the event that the Debtor has a Claim of any nature whatsoever against the Holders of Claims, the Debtor may, but is not required to setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any Claim that the Debtor has against the Holder of Claims.  Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right, except as set forth herein with respect to Class 6, shall not be permitted unless the Creditor provides the Debtor with written notice of the intent to affect such setoff or recoupment.  If the Debtor or the Disbursing Agent, as applicable, objects in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court.  In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the Claim held by the Bankruptcy Estate.

13.7   <u>Releases</u>.   On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtor, and to the maximum extent provided by law, its agents, release and forever discharge all Avoidance Actions (except those related to the claim objection process) and other claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:

13.7.1   Taek Kim, Nancy Vargas and Miyon Kim and all other officers and equity holders of the Debtor. ("Insider Released Parties"), in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtor or the Bankruptcy Estate and/or on account of the Debtor's Case. The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.

13.7.2   The Debtor's Professionals will be released from any and all claims and liabilities of the Debtor other than willful misconduct or if the release is otherwise restricted by the Texas Disciplinary Rules of Professional Conduct.

13.8   <u>Guarantors.</u> Nothing herein shall be deemed to release the liability of any non-debtor guarantor to a Creditor; provided, however, that so long as the Debtor is current with respect to all of its obligations under this Plan and the Confirmation Order Creditors may not pursue collection of their Claims from any guarantor. If the Debtor commits an uncured default in its obligations hereunder, then and only then may Creditors seek relief against guarantors.

13.9   <u>Lawsuits</u>. On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against the Debtor and any guarantor except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to the Debtor. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. **All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.** All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding in the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Post-Confirmation Reorganized Debtor to prosecute, settle or dismiss as it sees fit.

13.10   <u>Insurance</u>. Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor or Reorganized Debtor in which the Debtor or

any of the Debtor's representatives or agents is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order. Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

13.11   <u>U.S. Trustee Fees</u>.   The Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting these cases to cases under Chapter 7 or dismisses the cases. After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by them for each month or portion thereof, which these Chapter 11 cases remain open in a format prescribed by the United States Trustee.

13.12   <u>Term of Stays</u>.   Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1   <u>Corporate Authority</u>.   All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or stockholder resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtor, all Interest Holders, and all current directors of the Debtor.

14.2   <u>Documentation</u>.   The Debtor, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan. The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order. On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtor, and Creditors, as the case may be. All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

14.3   <u>Integration Clause</u>.   This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, Creditors, Equity Interests and the parties-in-interest upon the matters herein. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

14.4   Primacy of the Plan and Confirmation Order.  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

14.5   Severability.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 12 hereof so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.   Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

14.6   No Admission.  Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtor of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtor may possess against any other party.  In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtor's case.

14.7   Bankruptcy Restrictions.  From and after the Effective Date, the Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines.  The Disbursing Agent may, on behalf of the Debtor, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

14.8   Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

14.9   Closing of Case.  As soon as the Debtor has either obtained substantial consummation or otherwise performed its obligations under the Plan the Reorganized Debtor shall seek the entry of an Order of the Court closing these cases.

14.10   Successors and Assigns.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.11    <u>Notices</u>.  All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

> Multiworth Partnership, Ltd.
> PO Box 2467
> McAllen, Tx 78502
> Attn: Taek Kim

with copies to:

> Edward L. Rothberg
> Hoover Slovacek, LLP
> 5847 San Felipe, Suite 2200
> Houston, Texas  77057

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case.  Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtor.

14.12    <u>Validity and Enforceability</u>.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

14.13    <u>Plan Supplement</u>.  Any and all exhibits or schedules not filed with the Plan shall be contained in a Plan Supplement to be filed within ten (10) days of the Confirmation Hearing.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

Respectfully submitted this 2 day of December, 2010.

MULTIWORTH PARTNERSHIP, LTD.

By: Triworld International Investments., Inc., a
Texas Corporation, its general partner

By: _____
Taek Kim, President

26

EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395

ATTORNEYS FOR DEBTOR

**PLAN EXHIBIT A**

EXECUTORY CONTRACTS TO BE ASSUMED

**(To be supplemented prior to the confirmation hearing)**

712563_1.DOCX

## PLAN EXHIBIT B

**LEASE WITH ALAMO FLEA MARKET LTD.**

# (To be supplemented prior to the confirmation hearing)

# PLAN EXHIBIT C

## LEASE WITH MULTIWORTH INVESTMENTS CORP.
### d/b/a ALAMO DANCE HALL

# (To be supplemented prior to the confirmation hearing)